UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| PERFAC, INC., d/b/a Performance Sales and Marketing Group, | Case No. 12-CV-2955 (PJS/TNL) |
| Plaintiff, | |
| v. | ORDER |
| CENTOCO MANUFACTURING CORPORATION, a Canadian Corporation, | |
| Defendant. | |

Steven C. Moore and Galen E. Watje, WATJE & MOORE, LTD., for plaintiff.

Joel T. Wiegert and Erin D. Doran, MEAGHER & GEER, PLLP, for defendant.

Defendant Centoco Manufacturing Corporation ("Centoco") manufactures toilet seats. Centoco appointed plaintiff Perfac, Inc. ("Perfac") to act as a non-exclusive sales representative. Under the parties' agreement, Perfac earned commissions when it sold Centoco products to retailers. Perfac alleges that it sold Centoco toilet seats to Menard, Inc. ("Menards") in 2010, but that Centoco refused to pay the commissions owed to Perfac on that sale. Perfac brought this lawsuit against Centoco to recover those commissions.

This matter is before the Court on Centoco's motion for summary judgment. Centoco argues that Perfac is not owed commissions because Perfac was not authorized in writing to sell the line of toilet seats that Menards bought and because Perfac had nothing to do with that sale. The Court agrees with the latter argument, and thus grants Centoco's motion for summary judgment.

I.  FACTS

Taking the record in the light most favorable to Perfac, a jury could find the following:

Generally speaking, Centoco sells the toilet seats that it manufactures in three ways. First, Centoco maintains its own brand — Peter Anthony Designs ("Peter Anthony") — and it attempts to sell Peter Anthony seats to retailers.  Second, Centoco manufactures toilet seats for other companies, who market those seats under their own brands to retailers.  Third, Centoco manufactures toilet seats directly for retailers, who sell the seats in their stores under their own brands.  Thus, a particular retailer may sell several brands of toilet seats — some under its own brand, some under the Peter Anthony brand, and some under the brands of other companies — and all of the toilet seats might be manufactured by Centoco.

In 2006, Centoco and Perfac entered into a Retail Sales Agency Agreement ("the Agreement").[1]  *See* Wiegert Aff. Ex. D ("Agreement") [ECF No. 32-1 at 19-25].  Under the Agreement, Perfac was appointed "for the solicitation of Customer orders for the Products that have been approved in writing by [Centoco] . . . ."  *Id.* § 2.0.  Centoco agreed to pay commissions "of three (3%) percent of the Net Sales Amount of Products sold by [Perfac] . . . ." *Id*. § 10.0.  "Products" are defined as "any and all original or replacement toilet seats or other similar or like goods offered by [Centoco] for sale."  *Id.* § 1.0.  The Agreement includes a choice-of-law clause, under which Ontario law governs "any controversy arising under or in relation to this Agreement . . . ."  *Id*. § 15.0.

---

[1] The first page of the Agreement states that the Agreement was entered into on September 12, 2007, but this appears to be a typographical error.  The signature page of the Agreement indicates that it was signed on September 14, 2006; Perfac's amended complaint alleges that the parties' relationship dates from 2006, *see* Am. Compl. ¶ 4 [ECF No. 1-1 at 12-16]; and Centoco acknowledges in its brief that 2006 is the correct year, *see* ECF No. 30 at 3 n.3.

Menards was among the retailers to which Perfac was authorized to sell "Products." *See* Second Hazlett Aff. ¶ 2 [ECF No. 38]. Perfac attempted to sell the Peter Anthony brand toilet seats to Menards, but Perfac was unsuccessful in doing so. *Id*. In January 2009, a representative of Menards explained to Centoco and Perfac that Menards preferred to carry brands that were more familiar to consumers than the Peter Anthony brand. The Menards representative cited as an example the Eljer brand of toilet seats marketed by American Standard Brands ("American Standard"). *Id*. ¶ 4.

Immediately after this conversation with the Menards representative, Kevin Parent (Centoco's Global Sales and Marketing Manager) and Kirk Hazlett (Perfac's owner and president) formulated a plan under which Centoco would manufacture toilet seats under the Eljer brand and sell those seats to Menards. *Id*. Perfac contends that Parent promised Hazlett at that time that, if Centoco was successful in selling Eljer toilet seats to Menards, Centoco would pay Perfac a commission on those sales. *See* Hazlett Dep. 29-30 [ECF No. 37-3]. This plan, says Perfac, is memorialized in a series of April 2009 emails between Centoco, Perfac, and Menards:

- On April 7, 2009, Centoco's Account Manager Matt Hennin received an email from Menards in which Menards gave Centoco the contact information for a representative of American Standard. Later that day, Hennin told Parent that "Eljer wants to do this they are waiting on us." Parent Dep. Ex. 4 at 1.

- On April 9, 2009, Hennin emailed Menards with "the special Eljer brand quote." Parent Dep. Ex. 5 at 1. Hazlett was copied on that email. *Id*.

- Over the following week, Parent, Hennin, and Menards' representative Chuck Surges emailed back and forth about various quotes for various toilet seats, information about discounts, and comparisons to other products. *See* Parent Dep. Exs. 6-8. The email header for all of these messages is "RE: Centoco Quote for Eljer label." *Id*. Again, Hazlett was copied on each of these messages.

- On April 13, 2009, Parent asked Hazlett to "follow up" with Surges. Parent Dep. Ex. 9 at 1. Parent also stated that he believed "we are well positioned to become a significant supplier to Menards with the Eljer private label program." *Id*.

- Finally, on April 14, 2009, Hazlett emailed Parent that "per your request, I have been in contact with both Matt Hennin and Chuck Sturgis [sic], of Menards; I will make sure to get Matt abreast of any developments." Parent Dep. Ex. 10 at 1. Parent responded, "Thank you and good luck! This could be far greater than anyone imagined." *Id*.

Despite the optimism reflected in these emails, Menards did not purchase any toilet seats (under the Eljer brand or any other brand) from Centoco or Perfac at this time. *See* Second Hazlett Aff. ¶ 5.

Menards announced in mid-2010 that it would be conducting a full-line review of the toilet seats offered at its retail stores. *See* Moore Aff. Ex. F at 2 [ECF No. 37-6]. As part of the full-line review, Menards invited a number of manufacturers of toilet seats to "pitch" their products at a series of meetings. Centoco launched a two-pronged attack to persuade Menards to purchase Centoco-manufactured toilet seats:

First, Centoco worked with Perfac to pitch the Peter Anthony brand of toilet seats to Menards. *See* Hazlett Dep. 130-31. Centoco also worked with Perfac to attempt to persuade Menards to retain Centoco to manufacture the toilets seats sold under Menards' own "Tuscany" brand. *Id*. Eventually, Perfac focused on pitching the Tuscany line. It became clear to Perfac that Menards was unlikely to purchase the Peter Anthony line, as Menards again expressed concern that consumers were not familiar with that line. *Id*. Perfac and Centoco made their pitch about the Peter Anthony and Tuscany lines to Menards on November 4, 2010. *Id*. at 24-26.

Second, Centoco worked with American Standard to pitch the Eljer brand of toilet seats to Menards. Under the licensing agreement eventually reached by Centoco and American

Standard, Centoco would manufacture Eljer toilet seats, ship those seats to Menards, and receive payment for those seats directly from Menards, all while paying American Standard a licensing fee for use of the Eljer brand name. *See* Wiegert Aff. Ex. N [ECF No. 32-1]; Kruba Dep. 105-06 [ECF No 37-1]. A representative from Centoco, along with representatives from American Standard and Berglund & Associates (American Standard's sales representative), pitched the Eljer toilet seats to Menards on November 3, 2010 (the day before the Perfac presentation). *See* McDermid Decl. ¶ 7-8 [ECF No. 31]; Parent Dep. 155 [ECF No. 37-2]. Perfac had nothing to do with this presentation; no one from Perfac attended this presentation, and, indeed, no one from Perfac even knew that Centoco and American Standard were going to pitch the Eljer line to Menards. *See* Second Hazlett Aff. ¶ 6.

Perfac struck out. Menards decided not to purchase any Peter Anthony toilet seats, and Menards also decided not to retain Centoco to manufacture toilet seats under the Tuscany brand. *See* Hazlett Dep. 151-52. Menards did, however, decide to purchase the Eljer toilet seats manufactured by Centoco — the program presented by Centoco, American Standard, and Berglund & Associates. *Id*. After learning about the Eljer deal in December 2010, Hazlett (from Perfac) told Parent (from Centoco) that Perfac should be paid a commission on the Eljer sale. *See* Kruba Dep. Ex. 40 at 2. Parent responded that "Centoco regrets to inform you that there is no earnings opportunity for [Perfac] on the Eljer business" and that Perfac's "role and opportunity was and remains specific to Centoco's line review platform which is [Peter Anthony] and/or Tuscany brands only." *Id*. at 1. Parent also told Hazlett that "the Eljer program is under the control of *American Standard* and Centoco is merely a manufacturer for the products they propose for *their* private label program." *Id*.

Hazlett learned in late December 2010 or early January 2011 that "Centoco was not merely a manufacturer" of the Eljer brand toilet seats, "but that the Eljer Label was being ordered, invoiced and shipped directly through Centoco, and that Centoco paid a royalty fee to American Standard to sell the Eljer brand to Menards."  First Hazlett Aff. ¶ 12 [ECF No. 17].  After learning the full details of the Eljer deal, Hazlett reached out to Centoco about having Perfac represent Centoco with respect to its dealings with Menards and the Eljer program.  *See* Wiegert Aff. Ex. Q [ECF No. 32-1 at 91].  That plea, however, was rejected.

Roughly two years later (in October 2012), Centoco notified Perfac that it was terminating the Agreement.  *See* Wiegert Aff. Ex. S [ECF No. 32-1 at 93-94].  Perfac filed this lawsuit not long thereafter, alleging that Centoco had breached the Agreement by failing to pay commissions on the sale of Eljer toilet seats to Menards.  Perfac also alleges that Centoco violated Minn. Stat. § 325E.37 and Minn. Stat. § 181.145 by failing to timely pay those commissions.  Finally, Perfac alleges that Centoco committed fraud when Parent said that "Centoco is merely a manufacturer" of the Eljer products.  Kruba Dep. Ex. 40 at 1.

## II.  ANALYSIS

### A.  Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute over a fact is "material" only if its resolution might affect the outcome of the lawsuit under the substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Id*. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id*. at 255.

### B. Breach of Contract

Perfac claims that Centoco breached the Agreement by failing to pay commissions on the sale of Eljer toilet seats to Menards. Centoco offers two arguments in response. First, Centoco points out that Perfac's right to receive commissions under the Agreement extends only to products that Perfac has been authorized in writing to sell. *See* Agreement § 2.0 ("[Centoco] hereby appoints [Perfac] for the solicitation of Customer orders for the Products *that have been approved in writing by [Centoco]* . . . .") (emphasis added). But, says Centoco, Perfac was not authorized in writing to sell the Eljer seats; instead, Perfac was authorized to sell only the Peter Anthony and Tuscany seats. Second, Centoco argues that even if Perfac was authorized in writing to sell the Eljer seats, it did not actually *sell* any of those seats to Menards. Instead, the seats were sold by Centoco, American Standard, and Berglund & Associates. Thus, says Centoco, Perfac is not entitled to any commissions on the sale of the Eljer seats.

For the reasons discussed at the hearing on Centoco's motion for summary judgment, the Court believes that a jury could find that Centoco authorized Perfac to sell Eljer toilet seats. Specifically, a jury could find that Centoco provided written authorization to Perfac to sell Eljer toilet seats in the April 2009 emails quoted above, and that this written authorization remained in effect in November 2010, when Menards conducted its full-line review.

That said, to be entitled to commissions, Perfac must still prove that it *sold* the Eljer seats to Menards.[2] *See* Agreement § 10.0 ("[Centoco] agrees to compensate [Perfac] a sales commission of three (3%) percent of the Net Sales Amount of Products *sold by [Perfac]* . . . .") (emphasis added). Simply put, there is no evidence that Perfac was responsible in any way for the sale of Eljer seats to Menards. That sale was the result of a successful presentation made to Menards by Centoco, American Standard, and Berglund & Associates in November 2010. Perfac had nothing to do with that presentation. No representative of Perfac was in the room when the presentation was made, *see* McDermid Decl. ¶ 13, and indeed Perfac was not even aware that the presentation was going to be made, *see* Second Hazlett Aff. ¶ 6. There is also no evidence that Perfac's previous efforts to sell Centoco products to Menards — either its failed effort to persuade Menards to buy the Peter Anthony line, or its failed effort to persuade Menards to retain Centoco to manufacture the Tuscany line, or its failed effort (in April 2009) to persuade Menards to buy Eljer toilet seats manufactured by Centoco — had any role whatsoever in the decision of

---

[2]Perfac argues that it is entitled to commissions because it performed the duties required of it under the Agreement — specifically, its duties to use best efforts and devote sufficient time to completing sales. *See* Agreement § 5.0. But the Agreement does not award commissions on *attempts* to sell Centoco products. It awards commissions on *sales* of Centoco products. *Id*. § 10.0. Perfac failed to sell any Centoco products to Menards, and thus it is not entitled to commissions.

Menards in November 2010 to purchase the Eljer seats.[3] Because Perfac did not sell any Eljer seats, it is not entitled to be paid a commission on the sale of those seats.

Perfac complains that "to the extent it was not involved in the November 2010 presentation to Menards of the Centoco seats with the Eljer label, it was because Centoco breached its obligation of good faith and prevented Perfac from performing any conditions precedent to receiving the commissions." ECF No. 35 at 28. As noted, pursuant to a choice-of-law clause in the Agreement, Ontario law governs this dispute. Ontario's law regarding the implied covenant of good faith was summarized by the Ontario Count of Appeal as follows:

> Canadian courts have not recognized a stand-alone duty of good faith that is independent from the terms expressed in a contract or from the objectives that emerge from those provisions. The implication of a duty of good faith has not gone so far as to create new, unbargained-for, rights and obligations. Nor has it been used to alter the express terms of the contract reached by the parties. Rather, courts have implied a duty of good faith with a view to securing the performance and enforcement of the contract made by the parties, or as it is sometimes put, to ensure that parties do not act in a way that eviscerates or defeats the objectives of the agreement that they have entered into.

---

[3]Perfac insists throughout its briefing that the Peter Anthony and Tuscany toilet seats that it tried and failed to sell to Menards are identical to the Eljer seats that Menards later purchased — except, of course, for the labels affixed to the seats. Perfac then suggests (without any real evidence) that the success of the November 3 presentation of Eljer seats by Centoco, American Standard, and Berglund & Associates must have been the result of the work that Perfac put into its unsuccessful presentation of Peter Anthony and Tuscany seats on November 4. But even assuming that the Peter Anthony and Tuscany seats are the same as the Eljer seats in every respect except the brand, that difference is important. Branding is crucial, not only for toilet seats, but for countless other products. When a consumer opts for a more expensive bottle of ketchup over a less expensive (but otherwise identical) bottle of ketchup, it is usually because of the brand. Indeed, in this case, Menards's primary (perhaps sole) reason for rejecting the Peter Anthony seats was the weakness of the brand. *See* Hazlett Dep. 35. Thus, the toilet seats that Perfac tried to sell were *not* identical to the Eljer seats with respect to the thing that may have mattered most: the brand.

*Transamerica Life Canada Inc. v. ING Canada Inc.* (2003), 68 O.R. 3d 457, para. 53 (Can. Ont. C.A.) (citations omitted).

Perfac claims that Centoco violated the Agreement's implied covenant of good faith in three respects. First, Centoco excluded Perfac from the November 3, 2010 presentation that resulted in the sale of Eljer seats to Menards. *See* Second Hazlett Aff. ¶ 6. Second, Centoco allowed Perfac to put many hours of preparation into the Peter Anthony and Tuscany presentation without informing it that Centoco would be assisting in a competing presentation. *See* Hazlett Dep. 26. Third, Centoco broke the oral promise made by Parent in January 2009 that Perfac would receive a commission on any sales that might result from the Eljer program.

None of these actions "eviscerate[d] or defeat[ed] the objectives" of the Agreement, however, and thus none violated the implied covenant of good faith. *Transamerica Life Canada Inc.*, 68 O.R. 3d 457, para. 53. First, nothing in the Agreement gave Perfac the *exclusive* right to sell Centoco products, whether under the Eljer label or any other label. Centoco clearly retained the right to sell its own products directly or through other sales representatives. And certainly nothing in the agreement gave Perfac the right to participate in all sales pitches that Centoco might make. Perfac is attempting to use the implied covenant of good faith to turn a non-exclusive sales agreement into an exclusive sales agreement. That would "create new, unbargained-for, rights and obligations" and "alter the express terms of the contract reached by the parties," contrary to Ontario law. *Id.*

Second, Perfac's substantial efforts to pitch the Peter Anthony and Tuscany lines tends to undercut its argument that Centoco acted in bad faith. Centoco fully supported Perfac's attempt to sell toilet seats to Menards under the Peter Anthony and Tuscany labels. Representatives from

Centoco (including Parent) attended and participated in the November 4 presentation. *See* Hazlett Dep. 25-26. Hazlett acknowledged that the pricing authorized by Centoco for the Peter Anthony and Tuscany lines was competitive. *Id*. at 178. Centoco did not hinder Perfac's presentation in any way other than by assisting in a competing proposal — which, as just explained, was entirely permissible under Perfac's non-exclusive sales agreement.

Finally, Perfac is not suing for breach of the oral promise that Parent allegedly made to Hazlett in January 2009. Instead, Perfac is suing for breach of the written Agreement signed in September 2006. Whether Parent broke an oral promise that he made in January 2009 is irrelevant to whether Centoco breached an implied covenant of good faith in the Agreement.

In sum, a reasonable jury could not find that Centoco breached the Agreement by failing to pay a commission on the sale of Eljer toilet seats to Menards in November 2010. Perfac did not sell those toilet seats to Menards, and thus Perfac was not entitled to commissions on that sale. Perfac's claim for breach of contract is therefore dismissed.

## C. Remaining Claims

In addition to the breach-of-contract claim, Perfac also brings a fraud claim and two statutory claims. Perfac cannot recover on any of those claims.

First, with respect to the fraud claim: The only fraudulent misrepresentation identified by Perfac is Parent's statement in December 2010 that "the Eljer program is under the control of *American Standard* and Centoco is merely a manufacturer for the products they propose for *their* private label program." Kruba Dep. Ex. 40 at 1. Perfac alleges that this statement was false because it concealed Centoco's full role in the Eljer transaction. Far from being only a manufacturer, says Perfac, Centoco was actively involved in the sale of the Eljer seats, took

orders on those seats, delivered those seats to Menards, and received payment for those seats, with minimal involvement from American Standard.  *See* First Hazlett Aff. ¶ 12.

It is not clear whether Ontario law or Minnesota law applies to Perfac's fraud claim, but it does not matter, as the law of Ontario does not differ in any material respect from the law of Minnesota.  Under Ontario law,

> the tort of civil fraud has four elements, which must be proven on a balance of probabilities:  (1) a false representation by the defendant; (2) some level of knowledge of the falsehood of the representation on the part of the defendant (whether knowledge or recklessness); (3) the false representation caused the plaintiff to act; (4) the plaintiff's actions resulted in a loss.

*Combined Air Mech. Servs. Inc. v. Flesch*, [2014] 366 D.L.R. 4th 641, para. 87 (Can.).  Under Minnesota law, a plaintiff must prove that

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffered pecuniary damage as a result of the reliance.

*Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007) (quotation omitted).

Even assuming that Parent's statement was false and that he knew that it was false, Perfac has no evidence that this misrepresentation caused it to act (or fail to act) in any way.  Perfac learned that "Centoco was not merely a manufacturer" of the Eljer products by January 2011 at the latest — that is, about a month after the misrepresentation was made.  First Hazlett Aff. ¶ 12.  Perfac waited until October 2012 (nearly two years later) to bring this lawsuit against Centoco.

Thus, during almost the entire time between Parent making the misrepresentation and Perfac filing this lawsuit, Perfac knew that the misrepresentation was false and therefore could not have relied on it.

Moreover, even if Perfac somehow relied on Parent's misrepresentation during the roughly one month between when the misrepresentation was made and when Perfac learned that the misrepresentation was false, Perfac did not suffer any loss as a result of that reliance. The only loss claimed by Perfac is that it was "deprived of the benefit of the commissions" it was owed on the Eljer sale. ECF No. 35 at 37. But as the Court has already held, Centoco did not owe Perfac any commissions on the sale of Eljer seats to Menards. Parent's alleged misrepresentation therefore did not cause Perfac any loss whatsoever. Accordingly, Perfac's fraud claim must be dismissed.

Second, with respect to the statutory claims: Perfac alleges that Centoco violated Minn. Stat. § 325E.37 and Minn. Stat. § 181.145 by failing to promptly pay the commissions owed to Perfac on the sale of the Eljer toilet seats to Menards after the termination of the Agreement. But, as Perfac acknowledged at oral argument, Perfac's right to recover damages under those statutes is contingent on Perfac being owed commissions under the Agreement. The Court has held that Centoco did not owe Perfac commissions on the sale of the Eljer seats to Menards, and thus the statutory claims fail.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The motion for summary judgment of defendant Centoco Manufacturing Corporation [ECF No. 28] is GRANTED.

2. The amended complaint [ECF No. 1-1] is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: March 26, 2014

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge